**Mary STRICKLAND, Plaintiff-Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Resources, Defendant-Appellee.**

**No. 79-3766**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 24, 1980.

Rehearing Denied June 6, 1980.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

James Bass, Michael Krzys, Savannah, Ga., for plaintiff-appellant.

Henry L. Whisenhunt, Jr., Asst. U. S. Atty., Savannah, Ga., for defendant-appellee.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

TATE, Circuit Judge:

The district court granted summary judgment and upheld administrative denial of the claimant's application for supplemental security income benefits based on disability. The claimant appeals.

Under the applicable statute, the claimant can be considered disabled and thus eligible for supplemental security income benefits only if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c (1974). The district court affirmed the Secretary's denial of benefits, which was based on the finding of the Administrative Law Judge that Mrs. Strickland was capable of returning to her former occupation. Because we find no substantial evidence in the record in support of this finding, we reverse. Further, we must remand for additional administrative consideration of an issue not reached in the earlier proceedings. Incapacity to return to former employment does not conclude the disability issue under the statute (the only issue thus far administratively addressed), because statutory disability results only from an incapacity to engage in "*any* substantial gainful employment." We therefore remand for consideration of Mrs. Strickland's ability to undertake other substantial, gainful activity. Once (as we find) the claimant has proved inability to return to former employment, the burden shifts to the Secretary to show that the claimant is capable of engaging in other substantial gainful employment. *Knott v. Califano*, 559 F.2d 279, 281 (5th Cir. 1977).

*Overview of Legal Principles Applicable*

Essentially, the Title XVI Supplemental Security Income (SSI) provisions of the Social Security Act, under which this claim arises, were designed to provide benefits for persons not covered under the Title II social security benefits. McCormick, Social Security Claims and Procedures, Section 793 (2d ed. 1978). However, the relevant provisions of Title II of the Act (Federal Old-Age, Survivors, and Disability Insurance Benefits), 42 U.S.C. § 401 et seq., are identical to those of Title XVI (Supplemental Security Income for Aged, Blind, and Disabled), 42 U.S.C. § 1381 et seq. Thus, although there are relatively few judicial decisions interpreting and applying the SSI disability definition, 18 U.S.C. § 1382c(a)(3)(A),[1] the many decisions inter-

---

1. 42 U.S.C. 1382c(a)(3)(A) provides:

    An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determin-able physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or in the case of a child under the

preting the identical definition of disability for social security insurance coverage, 42 U.S.C. § 423(d)(1)(A), are persuasive for interpretation of SSI disability also. Likewise, as amended in 1976, the judicial review of SSI determinations by the Secretary, under 42 U.S.C. § 1383(c)(3), was specifically made identical with that provided for the Secretary's social security determinations by 42 U.S.C. § 405(g).

■ The issue before this reviewing court is the identical question of law that faced the district court: whether the administrative findings are supported by substantial evidence. *Clinch v. Celebrezze,* 328 F.2d 778 (5th Cir. 1964); *Flemming v. Booker,* 283 F.2d 321 (5th Cir. 1960). If so supported, the findings are conclusive; the reviewing court may not reweigh the evidence or substitute its judgment for that of the administrative fact-finder, even if the reviewing court views the evidence as preponderating otherwise. 42 U.S.C. §§ 1383(c)(3), 405(g), *Laffoon v. Califano,* 558 F.2d 253, 253 (5th Cir. 1977).

■ The narrowly circumscribed ambit of judicial review does not, however, excuse the court from a responsibility to scrutinize the record in its entirety to determine whether substantial evidence supports each essential administrative finding, *Simmons v. Harris,* 602 F.2d 1233 (5th Cir. 1979). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established." *National Labor Relations Board v. Columbian Enameling and Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). Nothing less than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" will do. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting from Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938).

■ Thus, like the hearing officer himself, we must consider the evidence as a whole, *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979), including "(1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by his wife, other members of his family, his neighbors and others who have observed him; and (4) the claimant's age, education and work history." *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972).

### Overview of the Facts

In Mrs. Strickland's case, the record consists of a transcription of the testimony of the claimant, as developed by the questioning of the hearing examiner and appointed legal counsel, and various pages of agency forms and medical records, reports, and opinions.

Mrs. Strickland testified that she was 38 years old at the time of the hearing, married with seven dependent children. She had completed nine or ten grades in school and had a work history consisting entirely of physical labor as a motel maid, farm laborer, and domestic. She felt that she had become disabled after hospitalization for a hysterectomy in 1972. Although she attempted to work after that time, the claimant said that her efforts resulted in additional hospitalization and admonitions from her doctor to discontinue these efforts. According to Mrs. Strickland, her former work involved considerable bending, stooping, lifting; she now experiences pain with

age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

42 U.S.C. § 1382c(a)(3)(B) and § 423(d)(2)(A) relevantly provide, with regard to SSI and social security insurance claimants respectively, that a claimant

shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

such activities and has had considerable difficulty with the development of hernias and re-opening of an incision on her abdomen. The claimant's ability to do housework has also become severely curtailed, and she relies on her older children for all but limited cooking and loading of the washing machine. According to the claimant, she has undergone in the intervening years nine surgical procedures on her abdomen. Other medical problems to which she avers include ulcers, stomach pain, hernias, a non-healing abdominal wound, spasms, anxiety, nerve problems, dizziness, and insomnia.

The remainder of the record contains medical records and reports from eight physicians and one applied psychologist. Two of the doctors—the claimant's personal physician and a medical consultant to the agency—characterize the claimant as disabled. Her own physician, Dr. William Gillikin, indicated in September, 1974, that Mrs. Strickland was unable to undertake occupational duties at the time because he was treating her for intestinal obstruction and severe weight loss. A March, 1975, certificate, unsigned but on the letterhead of the clinic with which Dr. Gillikin is associated, notes her disability due to treatment for "right direct inguinal herniorrhaphy; anterior ventral abdominal herniorrhaphy." In letters of November, 1975, and March, 1976, Dr. Gillikin described Mrs. Strickland as suffering with "(1) Melancholic depression (2) Chronic severe depressive reaction (3) Chronic draining wound dehiscence of anterior abdominal wall with acute and chronic cellulitis (Pseudomonas, etc.) (4) Prolapse of rectum on straining stool and lifting heavy objects." These letters also mention her recent operations and note that she had been unable to work since August, 1973, concluding finally, "She is also disabled from the standpoint of chronic weight loss secondary to malnutrition." Dr. Walters, a consultant to the Disability Determination Unit, concluded in February, 1977, that the claimant "is disabled by mental problems and 'inability to compete'—Is a chronic alcoholic, malnourished . . . Is unable to hold down a job."

Reports of several other physicians which do not expressly address disability are also found in the record. A December, 1974, physical examination report by Drs. Gottschalk and Purvis diagnoses Mrs. Strickland as suffering from melancholic depression and internal hemorrhoids. A January, 1976 report to the Disability Adjudication Section by Dr. Wills, a neurologist and psychiatrist according to his letterhead, does not evaluate the degree of impairment or disability, specifically warning that "I am unable to evaluate the significance of the complaints given in this history." Several statements in this doctor's letter reveal an impression that the claimant was exaggerating or dramatizing her condition to some extent. He notes that she "appears to be well-developed and well-nourished" and that her mood is one of depression but "is difficult to evaluate." His conclusions are recorded as follows: 1. "Intoxication associated with medication abuse and possibly alcohol. 2. Rule out alcoholism. 3. Hysterical neurosis with much conscious manipulative behavior and very strong passivity and dependency needs and some depression (mentally competent to handle her own funds)." He makes a recommendation for a social service investigation of "the possibility of alcohol abuse and abuse of medication."

Dr. Samson, also a physician consulted by the administrative agency, filed a report in October 1975. He noted the following symptoms in his examination: poorly kept mouth, frequent bronchitis, non-healing abdominal wound, dizziness and paresthesia, nervousness and headaches, abdominal and hypogastric pain, multiple surgical scars on the abdomen, and other somatic complaints. Without expressing any opinion as to disability, he diagnosed the claimant as ailing from "1. Non-healing abdominal wound 2. Bronchitis 3. Anxiety 4. Functional Gastrointestinal Distress."

Mrs. Strickland's therapist, Applied Psychologist John Adams, expressed the opinion in September, 1976, that she "may not be able to [work] due to her habitual non-productiveness." He mentions that his associate, Dr. Smith, examined her abdomen and did not feel that she was physically

disabled. A postscript added to the letter after Adams learned that Mrs. Strickland had fainted and hit her head during an attempt to work at light housekeeping concludes, "Perhaps she's not able to work."

Finally, the record contains one medical opinion that Mrs. Strickland is not disabled within the meaning of the social security law. Dr. Wilkers, reviewing physician for the Disability Determination Unit, took note of evidence relating to the claimant's abdominal surgical wound, her level of nourishment and her mental condition, and reported that "[e]vidence fails to show a disabling condition for duration of 12 months, claimant should be able to return to employment for which she is vocationally qualified, usual employment and claim is being denied." It is apparent that this doctor's conclusions are not based on an examination of the claimant. The report is headed with the names of Drs. Gillikin and Wills and is cast in language indicating that it is based on their observations.

In addition to these medical reports, the record contains seven and one-half pages of patient chart notations. Thirty entries beginning on August 28, 1973 and ending on February 2, 1976 make repeated reference to Mrs. Strickland's abdominal and gastrointestinal pains, her anxiety and nervousness, a peptic ulcer, sinusitis, cystitis, anorexia nervosa, and bronchitis, among other maladies. Between January, 1974 and the last entry, references to her anxiety, nerves, or hysteria occur a dozen times and there are at least a dozen prescriptions for valium, quaaludes, or thorazine within that period.[2]

*Administrative Law Judge's Conclusion of Law and Findings of Fact*

The Administrative Law Judge (ALJ) discusses in some detail this entire record,

concluding with three pages of "Evaluation of the Evidence" and "Specific Findings of Fact." He decided that "[t]he claimant, having failed to establish that she is physically or mentally impaired to the degree which would prevent her from engaging in one or several of the occupations in which she formerly engaged with some regularity, is not totally disabled within the provisions of section 1614 of the Social Security Act, as amended, and is not entitled to supplemental security income benefits."

The ALJ's conclusion of law will not be disturbed on judicial review (a) if it was reached through application of proper legal standards, (b) if the fact findings upon which it is based are supported by substantial evidence, and (c) if it was based on findings of fact which resolve the crucial issues. *McCarty v. Richardson*, 459 F.2d 3 (5th Cir. 1972); *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964). Without substantial contention otherwise, the ALJ applied the proper legal standards. Having found that no physical or mental impairment prevented the claimant from engaging in her former occupations, it was unnecessary for him to make findings as to whether she could perform other work (*see* footnote 1 *supra*, for statutory test). Only if the claimant establishes his disability to perform his usual job does the burden shift to the Secretary to show there is some other kind of substantial gainful employment that the claimant is able to perform. *White v. Harris*, 605 F.2d 867, 869 (5th Cir. 1979).

With regard to the factual contentions, the ALJ made nine specific findings of fact, one of which was modified by the district court.[3] Six of them are clearly supported by substantial evidence (Nos. 1, 2, 3, 4, 5 (as

---

**2.** The handwritten and poorly reproduced notations are difficult to read. It appears that most of these visits to the doctor resulted in prescriptions for between one and five different drugs. Other evidence in the record lists prescriptions for sleeping, pain, nerves and weight gain as medications with which Mrs. Strickland was being treated during the time of adjudication of this claim.

**3.** The ALJ found:

1. The claimant filed an application for supplemental security income on September 25, 1975, alleging she became disabled because of stomach ulcers, muscle spasms and nerves on September 15, 1972.

2. The claimant was born on February 7, 1937, and is now 39 years of age.

3. The claimant has been employed as a farm laborer, domestic, and motel maid.

modified by the district judge), and 8 (negativing disability from stomach ulcers or muscle spasms)). An additional one of the findings is less clearly supported: that repeated surgery had weakened the claimant's abdominal muscles so that she could no longer perform strenuous activities, but that nevertheless she was not disabled from working as a motel maid or a domestic or engaging in light farm work (No. 7).[4]

However, on review of the record we find that two of the findings (Nos. 6 and 9) are not supported by substantial evidence, and that the denial of benefits must additionally be reversed and remanded for further administrative proceedings because the ALJ failed to address a factual issue crucial to his conclusion of no disability. *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964). We address these reasons for reversal seriatim.

■ *The finding (No. 6) that the claimant's depression and nervousness was not of such severity as to prevent her from performing her usual work*: The Secretary apparently does not contest that, if proven, the claimant's loss of her physical and mental health due to nervous causes and emotional strain resulting from her repeated surgeries would entitle her to disability benefits. 42 U.S.C. § 1382c(a)(3)(C); *Goodley v. Harris*, 608 F.2d 234 (5th Cir. 1979); *Murphy v. Gardner*, 379 F.2d 1 (8th Cir. 1967); McCormick, Social Security Claims and Procedures, § 412 (2d ed. 1978). Our review of the record satisfies us that no substantial evidence supports the ALJ's finding that the claimant was not seriously disabled from performing her customary work because of her severe mental depression and nervous condition.

The only evidence in the record on which the ALJ could have relied in reaching this conclusion is the report of Dr. Wilkers, which is in turn based on that of Dr. Wills. This court has recently noted that the reports of physicians who did not examine the claimant, taken alone, "would not be substantial evidence on which to base an administrative decision." *Johnson v. Harris*, 612 F.2d 993, 998 (5th Cir. 1980). See also *Simms v. Weinberger*, 377 F.Supp. 321

---

4. The claimant has undergone abdominal surgery on several occasions in 1974 or prior thereto.

5. The claimant's abdominal infections following surgery subsided and by September 1, 1975, the incision had healed. [The district court found that the record showed that these surgical wounds did not heal until January, 1976, and accordingly modified this finding.]

6. Although the claimant may suffer from depression and nervousness at the present time, it is not of such severity as to prevent her from performing her usual and customary work.

7. Due to several abdominal operative procedures, the claimant's abdominal muscles are weakened to the degree that she is prevented from engaging in strenuous activities, but is not precluded thereby from engaging in her former occupations as a motel maid or domestic or light farm work.

8. The medical evidence fails to establish that the claimant has any significant problems with stomach ulcers or muscle spasms.

9. Neither the medical evidence of record nor the claimant's testimony is persuasive that the claimant has suffered from a physical or mental impairment during the period commencing on September 1, 1975, which has lasted or can be expected to last for a period of at least 12 consecutive months.

4. The conclusion that the claimant's abdominal muscles are so weakened as to preclude strenuous activity is amply supported by her testimony, which is also corroborated by doctors' references to her repeated operations, scars, pain, and inability to work.

The finding that Mrs. Strickland could return to her former work despite her abdominal problems is something of a enigma. The evidence upon which the ALJ must necessarily have relied in finding her muscles to be weakened and unable to withstand heavy manual labor is evidence fully supportive of her inability to return to her former work. Nor does the record indicate that working in tobacco fields, or even general housework or motel maid work, does not require strenuous activity, such as stooping, etc., from which the claimant is precluded by the disability found by the ALJ. Apparently, this judge exercised his credibility assessment role to characterize the evidence as believable but hyperbolic, and he therefore credited it only for what he perceived to be its basis in reality—a lesser degree of impairment. Although there is little evidence probative on the precise finding made, we will, for the moment, not disturb this finding.

(M.D.Fla.1974). Dr. Wilkers is the only physician to explicitly discount the disabling effect of Mrs. Strickland's mental maladies. The doctor's opinion does not form the substantial evidentiary basis for the judge's conclusion, nor may it acquire bootstrapped authority from the sources it relies upon. From the record, it appears that this doctor had access to some or all of the Dr. Gillikin exhibits and to Dr. Wills' letter. Dr. Gillikin, however, repeatedly characterized Mrs. Strickland as disabled, at least in part for melancholic depression and chronic depressive reaction. Dr. Wills also noted Mrs. Strickland's depression, finding it "difficult to evaluate," and additionally burdening his report with the caveat that "I am unable to evaluate the significance of the complaints given in this history." Thus, aside from *Johnson*'s discount of the conclusory report by a non-examining physician, we note the lack of evidentiary weight to be accorded to Dr. Wilkers' report under circumstances in which this non-examining physician (medical specialty unknown) ventures a conclusion based on a report by an examining psychiatric expert that the latter declined to make and that is not supported by the latter's observations or findings.

■■■ *The finding (No. 9) that neither the medical evidence nor the claimant's testimony proved a disabling physical or mental impairment during the period commencing September 1, 1975, which, had lasted twelve months*: No benefits are payable for a disability unless it has lasted or can be expected to last for twelve months. 42 U.S.C. § 1382c(a)(3)(A) (quoted note 1, *supra*); McCormick, Social Security Claims and Procedures, § 413 (2d ed. 1978) (explaining requirement). The finding is to some extent a mere summation of all the findings which address impairment; as such, it necessarily partakes of the inadequacy of fact-finding number six, identified supra, and therefore also lacks a substantial

basis in the evidence. If it was intended also as a finding that none of Mrs. Strickland's medical problems lasted, or will likely last, for twelve months, an examination of the evidence pertinent to her physical and mental impairment by reason of her mental and emotional condition (finding no. 6) demonstrates the unsupported nature of this conclusion. Mrs. Strickland's medical charts begin to take note of her anxieties and need for chemical mood alteration as early as January, 1974. Entries to the same effect recur through February, 1976. In addition, one medical report diagnoses her melancholic depression in December, 1974 and letters from her personal physician in November, 1975 and May, 1976 repeat the diagnosis. Thus, this impairment easily satisfied the twelve-month test according to uncontradicted evidence. An administrative law judge may not arbitrarily reject uncontroverted medical testimony. *Goodley v. Harris* 608 F.2d 234 (5th Cir. 1979). Fact-finding nine must be rejected as lacking in a substantial evidentiary basis.

■■■ *Crucial Issues Not Addressed*: The ALJ failed to address at all a fact issue raised herein which was essential to a conclusion of no disability, namely, the degree of impairment caused by the *combination* of physical and mental medical problems. *Dodsworth v. Celebrezze*, 349 F.2d 312 (5th Cir. 1965). The ALJ addressed certain of the claimant's complaints separately, tending to minimize them (sometimes despite quite strong evidence to the contrary, *see* note 4 *supra*), but he devoted no discussion and made no factfindings as to disability indicated as arising from the interaction or cumulation of even those medical problems whose existence he acknowledged or did not rule out.[5]

### Summary and Conclusion

■■■ Before concluding, we should note an additional issue raised by the claimant.

---

5. The ALJ's failure to reach any conclusions with respect to suspected chronic substance abuse by the claimant, which might itself have formed the basis of a disability claim, *Lewis v. Celebrezze*, 359 F.2d 398 (4th Cir. 1966); see also *Lewis v. Weinberger*, 402 F.Supp. 632

(D.C.Md.1975), is perhaps another failure in factfinding. We need not so hold, however, since the remand resulting from other errors in the administrative proceeding will afford an opportunity to develop facts on this matter.

She complains of a less than sympathetic attitude on the part of the ALJ in his comments upon both the claimant herself and concerning her evidence. We think this attitude may have been unwarranted. Nevertheless, we are unable to accept her argument on appeal that the district court somehow erred by failing to specifically rule upon her contentions as to the ALJ's lack of impartiality.

In summary of our holding, we do not find substantial support in the record for the Secretary's finding that Mrs. Strickland is capable of returning to one of her former occupations and is therefore not disabled. Accordingly, we reverse the administrative finding that she could work as a domestic, motel maid or farm laborer, and we remand, 42 U.S.C. § 405(a), for consideration of whether her impairments preclude other substantial gainful activity, so that the ultimate issue of her disability may be determined.

Accordingly, we reverse the district court's summary judgment in favor of the Secretary and remand the case with orders for the district court in turn to remand to the Secretary for further hearing in accordance with this opinion.

REVERSED and REMANDED.